right in printers, any more than in other persons, to do wrong. If a writing is libellous, and is knowingly published, the law presumes it to be malicious, unless it is proved to be published on an innocent or justifiable occasion. No man can protect himself from responsibility for a libel by pleading his ignorance of the real parties who are attacked, if he knows the publication to be libellous. He is bound not to do a wrong to another, whether personally known or unknown to him. Indeed, malice is so far from being disproved, by showing that the printer did not know who were the parties libelled, that it often aggravates the malignity of the case, by showing a wanton and indiscriminate malice, and an indifference to the peace of the innocent. It often takes away the pretence of good motives in the publication, since the party does not know and does not care, whether it be truth or falsehood. A printer of a newspaper is bound to abstain from publications, which he knows to be libellous, with more than ordinary care, for the wide circulation of his paper may often inflict upon the innocent an irreparable injury. It is no apology for him, that he is not the author; he who wantonly publishes a libel is just as guilty, in the eye of the law, as he who writes it. The author may write from private malice; but the injury is done by the publication.

The real questions then for the jury are, in the first place, whether the publication is a libel; and of this it seems to me there can be no doubt, unless we choose to shut our minds against the obvious meaning of the language. If it is a libel, then the next consideration is, whether the wife was the party alluded to, and whether the import of the language is truly set forth in the innuendoes in the declaration. The next inquiry is, whether the publication was made, by the defendant, with a knowledge that it was libellous. If so, the law presumes it to be malicious; for there is no pretence to say, that there was any justification from the occasion of publication, and an act is deemed malicious, not only when it arises from personal spite, but when it is a wanton and intentional injury. Malice is wilfulness. See Duncan v. Thwaites, 3 Barn. & C. 556, 584, 585; Bromage v. Prosser, 4 Barn. & C. 247.

Verdict for plaintiffs, $800.

## Case No. 3,868.
### DEXTER v. SULLIVAN.
[Brunner, Col. Cas. 585; [1] 14 Law Rep. 455.]

Circuit Court, D. Rhode Island. 1851.

PRACTICE—PRODUCTION OF PAPERS IN CAUSE IN STATE COURT.

The federal courts will not grant a subpoena duces tecum for the purpose of bringing up the original papers in a cause in a state court.

During the progress of the cause, Burgess, for defendant, applied for a writ of subpoena duces tecum, to have the original papers in a case in the supreme court of Rhode Island brought into the circuit court.

THE COURT refused the application, on the ground that it would not make a demand on another court, which would not be granted if made to this court, it being a rule of the circuit court not to allow original papers to go out of the clerk's office.

---

DEXTER (TABOR v.). See Case No. 13,723.

---

## Case No. 3,869.
### DEXTER v. UNITED STATES.
[Nowhere reported; opinion not now accessible.]

---

## Case No. 3,870.
### In re DEY.
[3 Ben. 450; [1] 3 N. B. R. 305 (Quarto, 81).]

District Court, S. D. New York. Nov., 1869.

LIENS ON BANKRUPT'S ESTATE—MECHANIC'S LIEN LAW OF NEW JERSEY.

1. A lien, to be recognized by the bankruptcy court, as a valid lien on property which passes from the bankrupt to the assignee in bankruptcy by virtue of the proceedings in bankruptcy, must be a lien at the time of the commencement of those proceedings.

[Cited in Stuart v. Hines, 33 Iowa, 60.]

2. A bankrupt filed his voluntary petition on May 17th, 1869. Among the property which passed to the assignee were buildings and machinery situated in New Jersey, upon which work had been done prior to May 17th, 1869, for which mechanics' liens were claimed on the buildings, under the laws of New Jersey, the earliest claim of such lien, however, being filed on May 29th, 1869. The assignee in bankruptcy filed a petition asking for a determination as to the validity of the claims of lien: Held, that under the mechanic's lien law of New Jersey, the lien did not exist as a lien upon the property at the time of the commencement of the bankruptcy proceedings: that, the assignee must distribute the estate without reference to the mechanics' liens, as such.

[Distinguished in Clifton v. Foster, 103 Mass. 233; Sabin v. Connor, Case No. 12,197. Disapproved in Re Coulter, Id. 3,276.]

[See note at end of case.]

This case came before the court on testimony taken under an order of reference, on a petition presented to the court by the assignee in bankruptcy, asking for a determination [as to the claims of certain mortgagees and] as to the validity of certain alleged liens, claimed as mechanics' liens, under the laws of New Jersey, on certain real estate, buildings and fixed machinery situated on the Hackensack river in New Jersey, owned by the bankrupt, and used by him in his business as a manufacturer there of poudrette. [There seems, on the evidence, to be no ques-

---

[1] [Reported by Albert Brunner, Esq., and here reprinted by permission.]

[1] [Reported by Robert D. Benedict, Esq., and here reprinted by permission.]

tion as to the validity of the mortgage liens against the assignee in bankruptcy. The only question to be determined is as to the alleged mechanics' liens.][2]

The petition in bankruptcy, which was a voluntary petition by the bankrupt [James R. Dey], was filed on the 17th of May, 1869. The earliest claim of lien, in respect to any of the alleged mechanics' liens, that was filed under the laws of New Jersey, was filed on the 29th of May, 1869. The work was done and the materials were furnished, in respect of which the liens were claimed, prior to the 17th of May, 1869. It was contended. on the part of the assignee in bankruptcy, that, under the laws of New Jersey, no lien had attached to the property in question, in favor of any one of the claimants of the alleged mechanics' liens, at the time of the commencement of the proceedings in bankruptcy. [The determination of this question involves a construction of the mechanic's lien law of New Jersey, upon the point as to whether the lien given thereby attaches when the work is done and the materials are furnished, or not until the claim of lien is filed.][2] The act in question was passed on the 11th of March, 1853 (Nixon's Dig., 2d Ed., p. 487; Id. p. 571). The 1st section of that act declares. that every building shall be liable "for the payment of any debt contracted and owing to any person for labor performed or materials furnished for the erection and construction thereof, which debt shall be a lien on such building, and on the land whereon it stands, including the lot or curtilage whereon the same is erected." The 5th section provides, that "every person intending to claim a lien upon any building or lands by virtue of this act, shall, within one year after the labor is performed or the materials furnished, for which said lien is claimed, file his claim in the office of the clerk of the county where such building is situate. which claim shall contain these matters," specifying four. The same section further provides, that. "when such claim shall not be filed in the manner or within the time aforesaid, or if the bill of particulars," which is one of the four matters, "shall contain any wilful or fraudulent misstatement of the matters above directed to be inserted therein, the building or lands shall be free from all lien for the matters in such claim." The 8th section provides, that, "when a claim is filed agreeably to the provisions of this act, upon any lien created thereby, the same may be enforced by suit, in the circuit court of the county where such building is situated. which suit shall be commenced" and prosecuted in the manner thereafter specified. The 9th section provides, that the declaration in the suit "shall conclude with an averment that said debt is, by virtue of the provisions of this act, a lien upon such building and lot. describing the same as in such claim," and that the owner of the

[2] [From 3 N. B. R. 305 (Quarto, 81).]

land and building "may plead that said house or land are not liable to said debt, and, in such case, it shall be necessary for the plaintiff, to entitle him to judgment against the house and lands, to prove that the provisions of this act, requisite to constitute such lien, have been complied with." The 12th section provides, that "no debt shall be a lien by virtue of this act, unless a claim is filed as hereinbefore provided, within one year from the furnishing the materials or performing the labor for which such debt is due." The 13th section provides, that "such land and building may be discharged from any lien created by this act," in four specified ways: (1) By payment and a receipt therefor, given by the claimant, and filed by the clerk, and an entry made by him in the lien docket, opposite the entry of the lien; (2) By paying to the clerk the amount of the claim; (3) By the expiration of the time limited for issuing a summons on the lien claim, without any summons being issued, or without notice thereof endorsed on said claim; (4) By showing, by the filing of an affidavit, that the owner gave a notice to the claimant, requiring him to commence suit to enforce such lien in thirty days from the service of such notice, and that such time has elapsed without such suit being commenced or without an entry of the time of issuing such summons being made on such claim. The 14th section provides, that "all lien claims for erecting the same building shall be concurrent liens upon the same and the land whereon the same is erected."

J. H. Strahan, for assignee.

J. H. Randolph and W. H. Peckham, for mechanic's lien creditors.

A. Thompson, for mortgagees.

BLATCHFORD, District Judge. It is impossible to read the provisions of the act in connection with each other, as a systematic whole, without seeing that it is not the intention of the statute that the performing of the labor or the furnishing of the materials, shall, of itself, constitute a lien for the debt upon the building or the land. The creating of the debt by such means only gives a right to the creditor to constitute the lien, by filing the claim within the time and in the manner specified. If he does not, as the 9th section declares, comply with the provisions of the act which are made requisite to constitute the lien, there is no lien; and the 12th section expressly declares, that the debt shall not be a lien, that is, shall not become at all a lien. unless the claim is filed in accordance with the 6th section, and within one year from the furnishing of the materials or the performing of the labor. It is true, that the 11th section of the act provides that the deed to be given on a sale of a building and lot on a special writ of fieri facias on a judgment against such building and lot, shall convey the estate in the lot which the owner

had at or any time after the commencement of the building, within one year before the filing of the claim in the clerk's office. But this is merely a provision that, when the lien is created or constituted by the due filing of a claim, it becomes a lien by relation, as of the time of the commencement of the building. Until the claim is filed, the lien rests only in posse. When such claim is filed, it becomes a lien in esse, as of the time when the building was commenced. That there is no lien until the claim is filed, is the view held of the statute by the court of chancery of New Jersey. In the case of Morris County Bank v. Rockaway Manuf'g Co., 1 C. E. Green [16 N. J. Eq.] 150, 161, the court (Chancellor Green,) held, that a claim not filed according to the requirement of the statute, constituted, under the provisions of the law, no encumbrance on the premises; and that the fact that a judgment at law had been entered upon the lien, when the lien claim had not been filed pursuant to the statute, did not give the debt any priority in payment or advantage over liens upon which judgment had not been rendered. No decision of any court in New Jersey was cited, on the argument, in conflict with these views.

There was, therefore, no lien, in this case, in respect to any of the alleged mechanics' liens, at the time the petition in bankruptcy was filed. The filing of such petition, followed by an adjudication of bankruptcy, is made, by section 38 of the bankruptcy act, the commencement of proceedings in bankruptcy under the act. By section 14 of the act, the assignment to the assignee in bankruptcy relates back to the commencement of the proceedings in bankruptcy. It is claimed, on the part of the holders of the alleged mechanics' liens, that, although their lien claims were filed after the commencement of the proceedings in bankruptcy, yet, as they were filed within the time limited by the statute of New Jersey, they became, by such filing, liens which must be respected and allowed by this court. The law is otherwise. Any lien, to be recognized by the bankruptcy court as a valid lien on property which passes from the bankrupt to the assignee by virtue of the proceedings in bankruptcy, must be a lien at the time of the commencement of the proceedings in bankruptcy. In re Bernstein [Case No. 1,350]; In re Schnepf [Id. 12,471]; In re Smith [Id. 12,973]; Pennington v. Sale [Id. 10,939]; Jones v. Leach [Id. 7,475]; In re Ellis [Id. 4,400]; In re Housberger [Id. 6,734]. The property in question passed under the jurisdiction of this court on the 17th of May, 1869, so as to cut off any liens subsequently sought to be imposed on it, and no proceeding thereafter, under the state law, to impose on it a lien not then created or constituted, was valid. If the subsequent imposition of the lien in this case were to be upheld, it would be difficult to deny, on principle, the right of a judgment creditor, by a judgment recovered before the commencement of the proceedings in bankruptcy, to create, as against the assignee in bankruptcy, a lien on personal property, by issuing or levying an execution thereon after the commencement of such proceedings, but within the time allowed by the law of the state therefor.

It results, that the assignee must distribute the estate without reference to the alleged mechanics' liens, as liens.

[NOTE. This case was subsequently brought up in the circuit court on a petition for review of the order of the district court. See Case No. 3,871. The decree of the district court was so modified as to secure to the petitioners the payment of their liens, in preference to the claims of the mortgagees and the rights of the assignee.]

## Case No. 3,871.

### In re DEY.

#### [9 Blatchf. 285.][1]

Circuit Court, S. D. New York. Jan. 3, 1872.

MECHANICS' LIENS—MORTGAGES—PRIORITY—
BANKRUPTCY.

Under the mechanics' lien law of the state of New Jersey (Nix. Dig. 4th Ed., p. 571), A. performed labor and furnished materials in erecting a building on real estate of B. in New Jersey. Afterwards, B. executed a mortgage to C., on such real estate. After that B. was adjudged a bankrupt, on his own petition, in the district court for the southern district of New York, and an assignee of his estate was appointed. Thereafter, and within one year after the performance of such labor, A. filed his claim, under said law, in the office of the clerk of the county, in New Jersey, in which such building was situated: Held, that the lien of A. attached as of the time the labor was performed, and was superior to the lien of C. under his mortgage, and that the real estate, in the hands of the assignee in bankruptcy, was subject to such lien of A.

This case came up on a petition by Hewes and Phillips, and a petition by Uzal Cory, for the review of an order of the district court [for the southern district of New York] touching the distribution of the bankrupt's estate, which order excluded liens claimed by the petitioners severally under the law of New Jersey, known as the "mechanics' lien law." 3 Ben. 450 [Case No. 3,870].

John H. Strahan, for assignee in bankruptcy.

Morris S. Thompson, for mortgagees.

Wheeler H. Peckham, for Hewes and Phillips.

Joseph F. Randolph and B. F. Randolph, for Cory.

WOODRUFF, Circuit Judge. The petitioners respectively claim liens upon certain real estate of the bankrupt, in New Jersey, for work and materials done and furnished for the erection of buildings thereon, prior to the adjudication in bankruptcy, made

---

[1] [Reported by Hon. Samuel Blatchford, District Judge, and here reprinted by permission.]